■ Bruce Pomahac, Respondent, v TrizecHahn 1065 Avenue of the Americas, LLC, et al., Appellants, et al., Defendants. (And a Third-Party Action.) [884 NYS2d 402]—

Order, Supreme Court, New York County (Rolando T. Acosta, J.), entered September 17, 2007, which, insofar as it denied defendants-appellants' motions for summary judgment, reversed, on the law, without costs, the motions granted and the complaint and all cross claims as against them dismissed. The Clerk is directed to enter judgment accordingly.

The accident giving rise to this action occurred at approximately 9:00 A.M. on October 29, 2003 in the lobby of a building managed by defendant TrizecHahn and maintained by defendant ABM. Plaintiff testified at his deposition that he opened the exterior door to the building, walked through a small vestibule, then passed through the interior door leading to the lobby. A mat covered the vestibule floor and a three-to-five-foot long mat was placed on the lobby floor immediately past the interior door. The terrazzo lobby floor appeared to plaintiff to be wet, which he attributed to tracked-in rainwater from a storm that produced over an inch and a half of rain. The storm had begun several hours before the accident and ended either shortly before or after it. As he entered the lobby, plaintiff noticed a yellow "caution" warning sign approximately 15 feet away and a man mopping the floor near the sign. As he walked past the man mopping the floor, plaintiff slipped and fell; there was no mat where plaintiff fell. A security guard monitoring the lobby testified at his deposition that someone spilled a cup of coffee in the area where plaintiff fell only moments before the accident and that the man mopping the floor was cleaning that spill at the time of the accident.

Plaintiff commenced this action against, among others,

TrizecHahn and ABM, claiming that they failed to maintain the lobby floor in a reasonably safe condition. The principal theory of plaintiff's case is that defendants failed to place additional mats in the lobby, including a mat covering the spot where he fell. Although plaintiff asserts that his fall was precipitated by tracked-in rainwater, he claims that the source of the moisture on the floor where he fell is irrelevant. He reasons that if additional mats had been placed in the lobby, the moisture, whatever its source, would have been absorbed. ABM moved for summary judgment dismissing the complaint and TrizecHahn's cross claims against it, as well as TrizecHahn's third-party action against it. TrizecHahn cross-moved for summary judgment dismissing the complaint and ABM's cross claims against it. After initially granting these motions, Supreme Court granted plaintiff's motion to reargue those motions and, on reargument, the court denied the motions of ABM and TrizecHahn.

ABM and TrizecHahn each made a prima facie showing of entitlement to judgment as a matter of law on the ground that, regardless of the source of the moisture, they took reasonable precautions to remedy the wet condition on the lobby floor. The undisputed evidence demonstrates that two mats were placed in the entranceway of the building, one in the vestibule and one on the lobby floor immediately past the threshold of the interior door; at least one yellow "caution" sign was placed in the lobby; and an ABM employee had mopped the floor several times before the accident occurred and was mopping it at the time of the accident. Thus, if the source of the moisture was tracked-in rainwater, defendants took reasonable measures to remedy it (*see Amsel v New York Convention Ctr. Operating Corp.*, 60 AD3d 534 [2009]; *Ford v Citibank, N.A.*, 11 AD3d 508 [2004]; *Sook Ja Lee v Yi Mei Bakery Corp.*, 305 AD2d 579 [2003]; *see also Gale v BP/CG Ctr. I LLC*, 49 AD3d 454 [2008]).* Similarly, if the source of the moisture was spilled coffee, defendants acted reasonably. According to the security guard who was stationed in the lobby, the coffee was spilled moments before the accident in the area where plaintiff fell. Almost immediately after the coffee was spilled, an employee of ABM placed a yellow "caution" sign in the area of the spill and began mopping the area.

In opposition, plaintiff asserts that ABM and TrizecHahn

---

* Defendants submitted evidence indicating that additional mats were placed in the lobby at the time of the accident, as well as additional yellow "caution" signs. However, that evidence is not consistent with plaintiff's testimony. Because ABM and TrizecHahn sought summary judgment against plaintiff, we view the evidence in the light most favorable to plaintiff and accept as true plaintiff's testimony.

failed to follow a practice they had established in dealing with tracked-in rainwater, a practice that plaintiff claims could have prevented the accident. Specifically, plaintiff demonstrated that defendants had a practice of placing three mats on the lobby floor when it was raining; these mats would be in addition to the mat in the vestibule, which was always present. Two of the mats would be placed side-by-side on the floor immediately past the interior door and the third mat would be placed at the end of the first two mats. Testimony regarding the length of the mats varied but demonstrated that each mat was between 10 and 20 feet long. Thus, while we cannot know how far into the lobby the mats would run if configured in the manner outlined above, we do know that the mats would run at least 20 feet into the lobby if so configured. Because plaintiff testified that he fell approximately 15 feet from the interior door, the mats, if placed in accordance with defendants' usual practice, may have covered the area in which the accident occurred.

Contrary to plaintiff's contention, that defendants had a practice of placing a certain number of mats in a particular fashion in inclement weather and failed to adhere to that practice at the time of the accident is insufficient to raise a triable issue of fact with respect to defendants' negligence. A defendant's failure to adhere to its own internal guideline or policy may be some evidence of negligence (*see* 1A NY PJI3d 2:16, at 254 [2009]). But where the internal guideline or policy requires a standard that transcends the standard required by the duty of reasonable care, a defendant's breach of the guideline or policy *cannot* be considered evidence of negligence (*Gilson v Metropolitan Opera*, 5 NY3d 574, 577 [2005], citing *Sherman v Robinson*, 80 NY2d 483, 489 n 3 [1992]; *Lesser v Manhattan & Bronx Surface Tr. Operating Auth.*, 157 AD2d 352, 356 [1990] ["While internal operating rules may provide some evidence of whether reasonable care has been taken and thus some evidence of the defendant's negligence or absence thereof, such rules must be excluded, as a matter of law, if they require a standard of care which transcends the area of reasonable care"], *affd sub nom. Fishman v Manhattan & Bronx Surface Tr. Operating Auth.*, 79 NY2d 1031 [1992]). The reasonable care standard does not require a defendant to cover all of its floors with mats to prevent a person from falling on tracked-in moisture (*see Negron v St. Patrick's Nursing Home*, 248 AD2d 687 [1998]; *Kovelsky v City Univ. of N.Y.*, 221 AD2d 234 [1995]; *see also Keum Choi v Olympia & York Water St. Co.*, 278 AD2d 106 [2000]); nor does it require a defendant to place a particular number of mats in particular places (*see generally Amsel, supra; Ford, supra; Sook Ja Lee, supra*). Instead, all of

the circumstances regarding a defendant's maintenance efforts must be scrutinized in ascertaining whether the defendant exercised reasonable care in remedying a dangerous condition. Thus, defendants' internal policy of placing three mats in a particular configuration and their failure to follow that voluntarily-adopted policy cannot serve as a basis of liability (*see Newsome v Cservak*, 130 AD2d 637 [1987]). We note as well that plaintiff's position relies on the erroneous proposition that defendants could satisfy their duty of reasonable care only by adhering to their prior practice, not by promptly mopping up the moisture.

Nor did the affidavit of plaintiff's engineer raise a triable issue of fact with respect to defendants' liability. The engineer stated that defendants should have placed a mat in the area where plaintiff fell because the terrazzo floor, when wet, is extremely slippery. The engineer based this opinion on, among other things, a reading of the coefficient of friction of the lobby floor taken several months after the accident. The engineer's affidavit fails to raise a triable issue of fact because his assertion that a mat was required to be placed in the area where plaintiff fell is unsupported by any generally accepted engineering standard or practice (*Jones v City of New York*, 32 AD3d 706 [2006]). Moreover, the engineer's opinion is entitled to no weight because he did not identify the basis for the coefficient of friction value he utilized as a standard and did not demonstrate that, at the time he measured the coefficient, the lobby floor was in the same condition as it was on the date of the accident or a substantially similar condition (*see Jenkins v New York City Hous. Auth.*, 11 AD3d 358, 360 [2004]).

The dissent emphasizes the issue of whether defendants had notice of the condition of the floor, finding a triable issue of fact on this score. The issue of notice, however, is irrelevant because defendants do not assert that they are entitled to summary judgment on the ground that as a matter of law they did not have notice of the condition of the floor. TrizecHahn argues that it is entitled to summary judgment because it took reasonable precautions to remedy the wet condition on the lobby floor. ABM makes that same argument and additionally contends that it is entitled to summary judgment because it owed no duty of care to plaintiff.

As noted above, it is well established both that a defendant's breach of its own internal policy cannot be considered evidence of negligence where that policy requires a standard that transcends the standard required by the duty of reasonable care, and that the reasonable care standard does not require a defendant to cover all of its floors with mats to prevent a person

from falling on moisture. The dissent, however, disregards both principles. Thus, even though defendants (1) provided two mats in the entranceway, i.e., one in the vestibule and one in the lobby—not one as suggested by the dissent—(2) placed at least one yellow "caution" sign, situated in the immediate area of plaintiff's fall, in the lobby, and (3) assigned a worker to mop the lobby periodically, including at the time of plaintiff's fall, the dissent nonetheless concludes that a triable issue of fact exists with respect to whether defendants should have placed more mats on the floor. The dissent cites no authority supporting its position.

The dissent dismisses as dicta the portions of the holdings in *Amsel* (*supra*), *Ford* (*supra*), and *Gale* (*supra*) that support defendants' position that as a matter of law they took reasonable measures to remedy the moist condition of the floor. The dissent reasons that in each of these cases the Court also concluded that as a matter of law the defendant did not have notice of the condition. In each case, however, the Court addressed *first* the issue of whether the defendant was entitled to judgment as a matter of law because it had taken reasonable measures to remedy the condition. Accordingly, if any portion of the discussion in these cases should be dismissed as dicta, the more reasonable conclusion is to regard the discussion of the issue of notice as dicta (*Amsel*, 60 AD3d at 535 ["Defendant established prima facie its entitlement to summary judgment by demonstrating that it had rained earlier in the day and was raining at the time of plaintiff's accident and that defendant had taken reasonable precautions to prevent the tracked-in water from accumulating by placing mats on the lobby floor and mopping the floor throughout the day and had neither actual nor constructive notice of the particular wet condition that allegedly caused the accident"]; *Ford*, 11 AD3d at 508-509 ["In the instant case, the defendant Citibank . . . established its prima facie entitlement to summary judgment as a matter of law by submitting evidence that it took reasonable precautions to remedy wet conditions on its premises caused by a lengthy rainstorm. In this regard, Citibank provided two mats and mopped its lobby floor within one hour prior to the time that the plaintiff allegedly slipped and fell. There was no evidence that Citibank created the wet condition, and it was not obligated to provide a constant remedy to the problem of water being tracked into a building in rainy weather. Moreover, Citibank demonstrated that it had no actual notice of the particular accumulation of water on the floor which caused the plaintiff to fall, and in the absence of proof as to how long this specific wet condition existed, there is no evidence to permit an inference

that Citibank had constructive notice of the condition" (internal quotation marks and citations omitted)]; *Gale*, 49 AD3d at 454 ["Plaintiff offered no evidence that defendant owners failed to take reasonable precautions to remedy wet conditions in the building at the time of the accident. After he stepped off the mats that had been provided, plaintiff slipped in an area that had been mopped less than 15 minutes earlier. During that 15-minute period, several people had walked through the area without incident, in full view of building employees. Therefore, plaintiff cannot show that the allegedly dangerous wet condition was visible and apparent for a sufficient length of time prior to the accident to permit defendants' employees to discover and remedy it" (internal quotation marks and citations omitted)]).

In light of our conclusion that TrizecHahn and ABM are entitled to summary judgment on the ground that they acted reasonably as a matter of law, we need not and do not pass on the merits of their remaining contentions. Concur—Andrias, J.P., Friedman and McGuire, JJ.

Moskowitz, J., dissents in a memorandum as follows: I dissent because the majority unjustifiably takes this case away from the jury. Plaintiff has raised an issue of fact as to whether appellants failed to use reasonable care to remedy the slippery wet floor, of which they had notice, by not placing a sufficient number of mats on the floor on the day of the accident.

Plaintiff slipped and fell on a wet terrazzo floor in the entry corridor of a building at about 9:00 A.M. Defendant TrizecHahn 1065 Avenue of the Americas, LLC (TrizecHahn) was the property manager which, it is undisputed, contracted for defendant American Building Maintenance Co. (ABM) to perform building maintenance.

It had been raining just before the accident. Plaintiff testified that it was no longer raining when he entered the building. As he entered the corridor, there was one mat extending no more than five feet, a yellow warning sign on the floor 12 to 15 feet away and a man mopping nearby. As plaintiff walked past the man about a third of the way into the 50-foot-long corridor, or approximately 15 to 20 feet from the entrance, he slipped and fell.

Frank DeSilvio, ABM's on-site foreman, testified that when it rained it was the building's practice to place two mats side by side extending 12 to 20 feet into the lobby and then a third mat of the same size in the center extending 12 to 20 feet further.

Nonparty security supervisor Errol Marshall and another individual were the ones who would place mats on the floor. It was Marshall's understanding that, on the day of the accident,

they had used all the available mats. Yet, he testified, he had seen other persons slipping on the floor that very morning and, immediately before plaintiff fell, he had called for more mats and for personnel to mop. This contradicted plaintiff's testimony as well as Marshall's own claimed understanding that the building had used all available mats. Moreover, defendants' surveillance tape showing only one mat in the corridor corroborates plaintiff's version.

Marshall testified that the corridor had been polished that week and that the substance used to polish the floor makes it slippery "when it gets wet." He had also personally investigated at least one other incident several months earlier when a Ms. Lauck fell on the wet floor in the corridor at approximately 8:30 A.M. and was aware of other unspecified incidents of people slipping on the floor after it had rained.

While I agree with the majority that defendants were not required to cover the entire floor with mats, or continuously mop, there are issues of fact concerning whether, under the weather conditions during the morning of October 29, 2003, ABM placed enough mats on the terrazzo floor.

Property owners and those to whom they delegate their responsibility have a duty to maintain their property in a reasonably safe condition under the circumstances (*Peralta v Henriquez*, 100 NY2d 139, 144-145 [2003]; *Basso v Miller*, 40 NY2d 233, 241 [1976]). Here, the evidence raises issues of fact as to whether defendants took reasonable precautions, even though they were not required to cover all of the floor with mats or to continuously mop up all moisture from tracked-in rainwater (*see Kovelsky v City Univ. of N.Y.*, 221 AD2d 234 [1995]).

First, it is not disputed that defendants were on constructive notice of the condition. While the inherently slippery nature of a floor is insufficient to impose liability (*see Eichelbaum v Douglas Elliman, LLC*, 52 AD3d 210 [2008]; *DeMartini v Trump 767 5th Ave., LLC*, 41 AD3d 181 [2007]; *Sarmiento v C & E Assoc.*, 40 AD3d 524, 527 [2007]), including terrazzo floors as here (*see Duffy v Universal Maintenance Corp.*, 227 AD2d 238 [1996]), plaintiff's theory of liability is that the floor on which he fell is slippery when wet. Although Marshall notified the building employees essentially contemporaneously with plaintiff's accident that people were slipping on the wet floor (*see Kovelsky, supra*), he related prior incidents of people falling on the same floor when it was wet. Defendants were thus aware of a recurring dangerous condition (*cf. White v New York City Hous. Auth.*, 55 AD3d 400 [2008]; *Keum Choi v Olympia & York Water St. Co.*, 278 AD2d 106 [2000]).

Moreover, there is at least a question of fact as to whether defendants had sufficient time to remedy the problem, because the rain had already stopped (*cf. Solazzo v New York City Tr. Auth.*, 6 NY3d 734 [2005]).

*Amsel v New York Convention Ctr. Operating Corp.* (60 AD3d 534 [2009]) and other cases relied on by the majority are distinguishable. *Amsel* does not indicate the number of mats that the defendant had put down because of the rain, it was still raining at the time of the accident, and the defendants had neither actual nor constructive notice of the particular wet condition that allegedly caused the accident.

Notice was similarly lacking in *Ford v Citibank, N.A.* (11 AD3d 508 [2004]). In *Ford*, where the Second Department held that the defendant had taken reasonable precautions by providing two mats and mopping its lobby floor one hour before the plaintiff fell, there was no evidence to permit an inference that the defendant had constructive notice of the condition and the decision does not indicate either the size of the lobby or the type of flooring. In view of the lack of notice, the ruling as to the reasonableness of the precautions was dicta. In *Gale v BP/CG Ctr. I LLC* (49 AD3d 454 [2008]), there was a lack of notice where the plaintiff slipped in an area that had been mopped less than 15 minutes earlier and, unlike here, during that 15 minute period several people had walked through the area without incident in full view of building employees. As noted, in *Keum Choi (supra)*, there was also a lack of notice of a dangerous condition.

Here, the corridor where plaintiff slipped and fell was 50 feet long, and there is evidence that the only mat in place extended perhaps five feet into it, covering only about one tenth of its length. There is therefore a question of fact as to whether this, the mopping and the caution sign constituted reasonable precautions under the circumstances.

Finally, ABM failed to support its contention that it did not owe plaintiff a duty of care under its contract with TrizecHahn (*see generally Espinal v Melville Snow Contrs.*, 98 NY2d 136, 140 [2002]). By failing to produce its maintenance contract, it was unable to show that its contractual obligation did not entirely displace property manager's owner TrizecHahn's duty to safely maintain the premises (*see Mastroddi v WDG Dutchess Assoc. Ltd. Partnership*, 52 AD3d 341, 342 [2008]). [*See* 2007 NY Slip Op 32865(U).]