■ ISAMAR RODRIGUEZ, Appellant, v 705-7 EAST 179TH STREET HOUSING DEVELOPMENT FUND CORPORATION, Respondent. [913 NYS2d 189]—

Order, Supreme Court, Bronx County (Betty Owen Stinson, J.), entered on or about September 16, 2009, which, in an action for personal injuries sustained in a fall on defendant cooperative's premises, granted defendant's motion for summary judgment dismissing the complaint, unanimously affirmed, without costs.

The exterior of the building entrance where the accident occurred had two stairs, a landing, then two more stairs. In her affidavit in opposition to the summary judgment motion, plaintiff asserts that on January 27, 2005 at 8:30 A.M., she slipped and was injured "due to the wet and icy conditions of the exterior stairs and rug of said premises, as well as the movement, shifting and crumpling of the unsecured rug on said exterior stairs."

At her deposition, plaintiff testified that on the morning of the accident it was cold, below freezing, with the sun shining, but not bright. It was warmer the day before. The rug covered most of the steps on the bottom stairs and it was "loose" and "frozen," with a clear and wet looking "icy patch," which could be described as "black ice," all over the rug. Plaintiff could not tell how thick the icy patch, which she did not see until after she fell, was. Nor did plaintiff see ice on the top stairs or landing. While plaintiff did see ice and snow in the courtyard, through which defendant had shoveled a small path from a

snow storm that occurred four or five days earlier, she did not see ice on the path to the stairs itself.

When asked how the accident occurred, plaintiff first testified that she slipped on the icy patch. When asked if she "slipped on the icy patch, tripped over the rug, or something else," plaintiff replied: "[i]ce on it." When asked if the rug moved, plaintiff replied that she did not remember because everything happened so fast. Although plaintiff did testify that after her fall she looked back and saw the rug was "kind of crumbled up" and that it was crumbled before her fall, when asked if the crumbling or the ice or a combination of the two caused her fall, she answered:

"A. Yes.

"Q. It was the ice?

"A. Yes."

In her bill of particulars, plaintiff claimed that defendant had constructive notice of the icy condition because it snowed approximately one week before the accident.

The Board's former president, Raymond Agosto, testified at his deposition that the building had a parttime porter who worked from 5:00 P.M. to 9:00 P.M. every day, except Saturday and Monday. The porter's duties included snow removal and he was instructed to make a two-foot path while a snow storm was in progress and to widen it after the storm stopped. The porter would throw a layer of salt after removing snow, or the day before, if he expected snow. If the porter was unavailable, Board members or volunteers would help with snow removal. It was the Board's decision to place a mat on the landing between the two exterior stairways. However, the stairs themselves were never covered by the mat. About 45 minutes after plaintiff's accident, Agosto saw the mat pushed to one side of the landing, folded over.

"A defendant who moves for summary judgment in a slip-and-fall action has the initial burden of making a prima facie demonstration that it neither created the hazardous condition, nor had actual or constructive notice of its existence. Once a defendant establishes prima facie entitlement to such relief as a matter of law, the burden shifts to plaintiff to raise a triable issue of fact as to the creation of the defect or notice thereof" (*Smith v Costco Wholesale Corp.*, 50 AD3d 499, 500 [2008] [citations omitted]).

On the record before us, defendant sustained its prima facie burden through: (i) plaintiff's deposition testimony that, at around 5:45 or 6:00 P.M. on the night before the accident, she

had used the stairs and did not see any ice; that on the morning of the accident, she did not see the icy patch, which looked like black ice, until *after* she fell; that she could not tell how thick the ice was; and that while she did see the rug on the steps two or three other times in the seven years she had lived in the building, and complained about inadequate snow removal to her mother and other tenants, she never complained to defendant about either of those conditions; and (ii) Agosto's deposition testimony that at around 6:30 P.M. on the night before the accident, he observed that the mat was in its proper place on the landing between the two exterior stairways, which were free of ice, and that he was not aware of any prior incidents or suits involving people who slipped in the area of plaintiff's accident (*see Thomas v Boston Props.*, 76 AD3d 460 [2010]; *Killeen v Our Lady of Mercy Med. Ctr.*, 35 AD3d 205 [2006]; *Manning v Americold Logistics, LLC*, 33 AD3d 427 [2006]; *Murphy v 136 N. Blvd. Assoc.*, 304 AD2d 540 [2003]).

In opposition to defendant's prima facie showing, plaintiff failed to raise a triable issue of fact. Plaintiff's theory that the hazards existed in time for defendant to have discovered and remedied them is speculative in light of the testimony of both plaintiff and Agosto that there were no hazardous conditions when they used the steps the evening before the accident; the absence of any evidence that there was a change in the weather that would have caused a thaw and freeze between that time and the accident the next morning; plaintiff's testimony that she did not notice the black ice before she fell and could not say how thick it was; and plaintiff and Agosto's testimony showing that there were no known complaints of a hazardous condition in the area where plaintiff fell. Nor is there any nonspeculative basis to conclude that defendant's snow removal activities may have caused or exacerbated the alleged hazards given that it last snowed a minimum of four or five days earlier and there was no hazardous condition on the evening before the accident (*see Disla v City of New York*, 65 AD3d 949, 949 [2009]; *Killeen*, 35 AD3d at 205; *Manning*, 33 AD3d at 427). Similarly, even if plaintiff's testimony is viewed as asserting that she tripped over the crumpled rug, the rug could have crumpled only minutes before her accident and a general awareness that carpets can bunch is not enough (*see Kasner v Pathmark Stores, Inc.*, 18 AD3d 440, 441 [2005]).

*Lebron v Napa Realty Corp.* (65 AD3d 436 [2009]) does not mandate a different conclusion. In *Lebron*, where the plaintiff slipped on a patch of ice on the sidewalk abutting defendant's 24-hour service station, we held that "[e]ven if the climatologi-

cal records were accurate, given the facts that defendant *always had employees on site and that those employees' duties included ensuring that the sidewalks were safe*, it can be presumed that seven hours were sufficient for those employees to notice and address the dangerous condition before the accident. Since it did not submit evidence establishing why its employees were not able to notice and address the condition in that time period, defendant failed to establish its prima facie entitlement to summary judgment" (*Lebron* at 437 [emphasis added]).

Here, no such presumption can be made. The evidence shows that no hazardous condition existed on the evening before plaintiff's accident, that the building's porter, whose duties included snow removal, only worked from 5:00 P.M. to 9:00 P.M., Sunday and Tuesday through Friday, that no prior complaints had been made to defendant concerning icy conditions or a loose rug at the accident location and that plaintiff did not observe any dangerous condition before her fall (*see Rivera v 2160 Realty Co., L.L.C.*, 4 NY3d 837 [2005] [plaintiff did not raise a triable issue as to constructive notice where he asserted that the beer bottle on which he tripped at 5:00 A.M. was not on the steps at 8:30 P.M. the night before and no evidence was offered indicating that the landlord was notified of the debris that night or that the bottle was present for a sufficient period of time that defendant's employees had an opportunity to discover and remedy the problem]). Concur—Andrias, J.P., Nardelli, Moskowitz, DeGrasse and Román, JJ.