Velocci v Stop & Shop (2020 NY Slip Op 06372)





Velocci v Stop & Shop


2020 NY Slip Op 06372


Decided on November 05, 2020


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: November 05, 2020

Before: Gische, J.P., Webber, González, Scarpulla, JJ. 


Index No. 155971/17 Appeal No. 12257 Case No. 2020-02473 

[*1]Anthony Velocci, Plaintiff-Appellant,
v
Stop and Shop, et al., Defendants-Respondents.


Napoli Shkolnik, PLLC, New York (Joseph P. Napoli of counsel), for appellant.
Cullen & Dykman LLP, New York & Dykman LLP, Garden City (Nicholas M. Cardascia of counsel), for respondents.



Order, Supreme Court, New York County (Robert D. Kalish, J.), entered November 20, 2019, which, to the extent appealed from as limited by the briefs, granted defendants' motion for summary judgment dismissing the complaint as against Stop and Shop, The Stop and Shop Supermarket Company, LLC, and Christopher Luisi, unanimously affirmed, without costs. 
According to plaintiff, on September 4, 2016, at about 10:00 a.m. he and his wife were shopping at a Stop and Shop supermarket in Ozone Park when he slipped and fell on water on the floor in front of an ice machine. Plaintiff testified at his deposition that for about a year before the accident, he and his wife shopped at the supermarket, every Sunday morning. Before the accident, he had never used the ice machine or complained that there was water near it. He and his wife arrived at the supermarket at about 8:30 a.m. and were in the store for about an hour and 10 minutes before the accident. After plaintiff and his wife paid for their groceries, they were about 15 feet from the exit when plaintiff slipped and fell in front of the ice machine. He did not see anyone using the ice machine, nor did he see "wet" signs as he walked towards the exit. Although he was holding onto his shopping cart, plaintiff lost his footing, struck his right knee on the floor, and landed in a split. According to plaintiff, two store employees saw him fall.
Plaintiff stated that he did not see the puddle, which was clear and about five inches in diameter, until after the accident. He stated that he did not know where the water came from and did not see any footprints or wheel marks going through it. Plaintiff offered his opinion that the water was condensation that had developed when customers who were buying bags of ice removed them from the ice machine and put them on the floor before paying for them.
Plaintiff's wife testified that she did not see anyone mopping or any maintenance carts in the area. She also did not see anyone using the ice machine before plaintiff's fall. She stated that after the accident, she saw little puddles on the floor in front of the ice machine. Other than the skid mark plaintiff left in the puddle after he slipped, plaintiff's wife testified there were no other marks going through the water. Further, she did not know how long the water had been on the floor before plaintiff fell or whether anyone complained about it before the accident.
Defendant Luisi testified that he had once seen drops of water on the floor in front of the freezer and cleaned it up with a paper towel. He stated that he could not remember if there had been any prior accidents at the supermarket or if anyone else had alleged that they slipped and fell near the checkout counters. According to Luisi, after the accident, he looked at the location and he saw that there were a couple of drops of water scattered on the floor in front of the ice freezer. Luisi referred to a "Clean Sweep Report," which provided entries for the periodic inspection and cleaning within the supermarket. The report indicated that the area had been inspected by a porter prior to the accident.
Defendants moved for summary judgment dismissing the complaint, arguing that according to the evidence, the accident was not proximately caused by any negligence on their part. They contended that neither Stop and Shop nor Luisi created or had actual notice that there was water on the floor before the accident. They noted that Luisi denied that anyone else had an accident in the area where plaintiff fell. Defendants further asserted that they lacked constructive notice of the condition, because, according to plaintiff's own testimony, the water on the floor was neither visible nor apparent and was not there long enough for employees to discover and remedy it before the accident.
Defendants also submitted an affidavit from the porter, in which she averred that she reviewed the "Clean Sweep Log" for the date of the incident, as well as the photograph of the accident location, and attested that she inspected the location at approximately 8:23 a.m., or about an hour and a half before plaintiff fell. She averred that she would have indicated "hazard" on the log had she seen water at the accident location during her inspection.
In opposition, plaintiff argued that defendants failed to make a prima facie showing that they maintained the location in a reasonably safe condition and did not create the condition, or have notice that there was water on the floor. Plaintiff contended that the water was a recurring condition, as defendants knew that it regularly accumulated in the area where plaintiff fell. Further, plaintiff argued that the porter's affidavit was insufficient to establish that defendants lacked constructive notice, because it described only the supermarket's general inspection practices and did not state which areas she inspected before the accident.
In further support of his opposition, plaintiff and his wife submitted somewhat identical affidavits averring that they shopped at the supermarket about once a week for the past five years and saw on several occasions before the accident that there was no mat or carpet in front of the freezer. Further, they averred they saw that there was water on the floor after bags of ice were left on the floor in front of the freezer.
Plaintiff also submitted an expert affidavit from a professional engineer who opined to a reasonable degree of engineering and safety certainty that the ice chest as installed and maintained by defendants caused the water to be on the floor where plaintiff fell. According to the expert affidavit, there was a long-term generating of water from the replenishment of ice which defendants failed to address. A second plaintiff's expert submitted an expert affidavit stating it was custom and practice in the industry to place cones and an absorbent rubber mat or carpet on the floor in front of a freezer, because it was known that water would constantly accumulate there when the bags of ice were placed into or removed from the freezer.
Supreme Court granted defendants' motion for summary judgment dismissing the complaint against them. The court found that defendants established that the area near the freezer had been inspected prior to the accident and there was no indication of any hazardous condition. The court found that plaintiff's deposition testimony confirmed that the water on the supermarket's floor was not visible or apparent when he fell and that his statements that customers or employees created the condition by placing bags of ice on the floor was speculative.
The court found no evidence that there had been a prior accident where plaintiff fell or that the water on the floor was a recurring condition. As to one of plaintiff's expert's averment that defendants were negligent in having no abatement or warning, the court found that this did not raise a triable issue of fact, because no showing was made that such efforts were necessary before plaintiff fell. Finally, the court found plaintiff's second expert's opinion failed to raise an issue of fact, because the ice freezer was not an inherently dangerous condition that required defendants to warn their guests, and in any event, his averment that water might result from placing bags of ice into and out of the freezer was speculative.
We find that the court properly granted defendants' motion for summary judgment. A defendant moving for summary judgment in a slip-and-fall action has the initial burden of showing that it did not create the alleged hazardous condition and lacked actual or constructive notice of its existence (see R0driguez v 705-7 E. 179th St. Hous. Dev. Fund Corp., 79 AD3d 518, 519 [1st Dept 2010]). A defendant establishes that it lacked actual notice when it produces a witness who can testify that no complaints about the location were received before the accident, and there were no prior incidents in that area before the plaintiff fell (see Frederick v New York City Hous. Auth., 172 AD3d 545, 545 [1st Dept 2019]).
Generally, constructive notice is found when the alleged dangerous condition is visible, apparent, and exists on defendant's premises for a sufficient period to afford the defendant an opportunity to discover and remedy it (see Ross v Betty G. Reader Revocable Trust, 86 AD3d 419, 421 [1st Dept 2011]). However, constructive notice can also be established by evidence that a recurring dangerous condition existed in the area of the accident that was routinely left unaddressed by the defendant (see Uhlich v Canada Dry Bottling Co. of N.Y., 305 AD2d 107, 107 [1st Dept 2003]). A defendant can meet its burden of showing that it lacked constructive notice by producing evidence of its maintenance activities on the day of the accident, and specifically showing that the alleged condition did not exist when the area was last inspected or cleaned before the plaintiff fell (see Gomez v J.C. Penny Corp., Inc., 113 AD3d 571, 571-572 [1st Dept 2014]; Vilomar v 490 E. 181st St. Hous. Dev. Fund Corp Corp., 50 AD3d 469, 470 [1st Dept 2008]). Should defendant fail to meet its initial burden to show that it did not cause, create, or have actual or constructive notice of the alleged condition, the burden never shifts to plaintiff to raise a triable issue of fact (see Hill v Manhattan N. Mgt., 164 AD3d 1187, 1187 [1st Dept 2018]; Colt v Great Atl. & Pac. Tea Co., 209 AD2d 294, 294-295 [1st Dept 1994]).
Defendants sustained their initial burden of establishing that their employees did not cause or create the dangerous condition. Plaintiff's deposition testimony shows that he did not see any of defendants' employees mopping or removing bags of ice from the freezer at the accident location before plaintiff fell, and plaintiff further testified that he did not know where the water came from (see Graham v YMCA of Greater N.Y., 137 AD3d 546, 547 [1st Dept 2016]; Briggs v Pick Quick Foods, Inc., 103 AD3d 526, 526 [1st Dept 2013]).
Defendants also established that the water was not on the floor for a sufficient period of time to charge them with having constructive notice that it was there. The porter averred that she inspected the area at about 8:23 a.m., or about an hour and a half before the accident and did not record any hazards. The deposition testimony of both plaintiff and his wife establish that the water puddle that caused plaintiff's fall was clear and without any footprints or marks (see Mueller v Hannaford Bros. Co., 276 AD2d 819, 819 [3d Dept 2000]; Masotti v Waldbaums Supermarket, 227 AD2d 532, 533 [2d Dept 1996]; cf. Negri v Stop and Shop, 65 NY2d 625, 626 [1985] [triable issue of fact as to constructive notice, because the floor was dirty and messy and the area had not inspected for at least 50 minutes before the accident]).
Defendants also sustained their burden of showing that they lacked actual notice of the water on the floor before the accident. There was no testimony as to any complaints about the area before the accident. Rather, defendants presented evidence regarding the Clean Sweep Log showing the supermarket was being cleaned daily and that the accident location was inspected about an hour and a half before plaintiff fell. The deposition testimony also establishes that neither plaintiff nor his wife complained to defendants before the accident. The affidavits by plaintiff and his wife which were submitted in opposition, attesting to several occasions before the accident where they saw water being deposited onto the floor when customers placed bags of ice in front of the ice freezer before purchasing them, were, as noted by the motion court, in direct conflict with their deposition testimony. These statements were also contradicted by evidence submitted by defendants that customers retrieved the ice after purchasing it.
Defendants sustained their burden of making a prima facie showing that they had no actual notice of the water on the floor before the accident. Defendant store manager Luisi testified that he was unaware of any complaints about the area which were made before the accident. Further, the testimony of both plaintiff' and his wife establishes that they did not complain to defendants before the accident.
Plaintiff's expert affidavits failed to raise a triable issue of fact as to whether defendants were negligent. First, the standards cited are couched in advisory terms and there is no evidence that they are an adopted and implemented industry standard or a generally accepted safety practice (see Diaz v New York Downtown Hosp., 287 AD2d 357, 357-358 [1st Dept 2001], affd 99 NY2d 542 [2002]; Augustin v Grand Prix N.Y. Racing, LLC, 138 AD3d 902, 903 [2d Dept 2016]). Although evidence of industry practice and standards is admissible to establish a duty of care, the expert affidavit fails to raise a triable issue of fact because it contains nothing more than conclusory opinions with respect to a deviation from an alleged industrywide practice of placing cones and absorbent rubber mats or carpets in front of ice freezers (see Boatwright v New York City Tr. Auth., 304 AD2d 421 [1st Dept 2003]; Walker v Commack School Dist., 31 AD3d 752, 752-753 [2d Dept 2006]; Phillips v McClellan St. Assoc., 262 AD2d 748, 749-750 [3d Dept 1999]).
We reject plaintiff's request to take judicial notice of section 28-301.1 of the 2008 Building Code, which imposes a general duty on owners to maintain their buildings in a safe condition. That allegation is not set forth in the bill of particulars and plaintiff never sought leave to amend (see Miki v 335 Madison Ave., LLC, 93 AD3d 407, 408 [1st Dept 2012], lv denied 19 NY3d 814 [2012]). THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: November 5, 2020