Zubillaga v Findlay Teller Hous. Dev. Fund Corp. (2021 NY Slip Op 04687)





Zubillaga v Findlay Teller Hous. Dev. Fund Corp.


2021 NY Slip Op 04687


Decided on August 12, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: August 12, 2021

Before: Acosta, P.J., Kapnick, Moulton, Scarpulla, JJ 


Index No. 27806/17E Appeal No. 14162-14162A, M-1056 Case No. 2020-03054, 2020-04599 

[*1]Francisco Zubillaga, Plaintiff-Appellant,
v
Findlay Teller Housing Development Fund Corporation, Defendant-Respondent, Belmont Arthur Avenue Development Corporation, Defendant.


Shapiro Law Offices, PLLC, Bronx (Ernest S. Buonocore of counsel), for appellant.
Rivkin Radler LLP, Uniondale (Henry M. Mascia of counsel), for respondent.



Order, Supreme Court, Bronx County (Fernando Tapia, J.), entered December 18, 2019, which, to the extent appealed from (see CPLR 5701[c]), denied the parties' third stipulated request for an adjournment of the return date on defendant Findlay Teller Housing Development Fund's (Findlay) motion for summary judgment and sua sponte directed that the motion be marked as fully submitted and unopposed, unanimously reversed, on the facts and in the interest of justice, without costs, and the motion granted. Order, same court and Justice, entered July 16, 2020, which, to the extent appealed from as limited by the briefs, granted, upon default, Findlay's motion for summary judgment dismissing the complaint as against it, unanimously reversed, on the law, without costs, and the motion denied.
On July 18, 2017, plaintiff Francisco Zubillaga, sustained injuries as a result of a slip and fall on a freshly mopped floor at 1201 Findlay Avenue in the Bronx, where he resided. Defendant Findlay owned the building on the date of the accident. The building was managed by defendant Belmont Arthur Avenue Development Corporation. In his complaint, plaintiff alleged that defendants created the dangerous condition and were negligent in "allowing the premises to be, become and remain in a dangerous, trap-like condition," despite having actual or constructive notice thereof.
Plaintiff testified at his deposition that he had lived in the building for 12 years, and acknowledged that if a building employee was mopping the floors, a yellow "wet floor" warning sign would be placed in the area. Plaintiff stated that if he saw a yellow warning sign, he understood that the floor would be wet and he had to be cautious when walking.
On July 18, 2017, before the accident occurred, plaintiff left the building, and did not see anyone mopping the floors or any wet floor warning signs. When he returned to the building at around 11:00 a.m., plaintiff did not see any wet floor warning signs on the building's main floor. Plaintiff took the elevator to the first floor, where he lived, and walked down a long hallway. He made a turn into another hallway, and saw a wet floor sign placed on the floor (the first warning sign). When asked if he was cautious after he saw the first warning sign, plaintiff testified, "No . . . I was walking normal because when I was walking the floor was dry." Plaintiff did not see anyone mopping the hallway.
After he passed the first warning sign, plaintiff reached the end of a T-shaped hallway, then turned right to the "east side hallway," took one step, slipped, and fell. After he fell, plaintiff saw that the floor was moist. Just seconds before he fell, plaintiff heard a nearby employee, who was mopping the hallway, yell to him, "Watch it." Plaintiff testified that the east side hallway, where he fell, also had a wet floor sign placed on the floor (the second warning sign). However, plaintiff did not see the second warning sign before he fell. When asked [*2]if the second warning sign was in a visible position, plaintiff testified that it was not, because it was leaning against a wall, as opposed to being open and standing on the floor. Plaintiff stated that while the second warning sign might have been visible if someone had looked toward the wall, he was not "looking for it." Plaintiff stated that the second warning sign was positioned only five or six feet away from where he slipped and fell.
Consolato Joe Cicciu, Findlay's president, testified that he was responsible for the building's upkeep. He described Findlay as "a housing development fund corporation specifically incorporated to provide affordable housing to elderly and handicapped individuals." Cicciu testified that the building porter's duties included sweeping and mopping; however, he did not recall the mopping schedule. The first time Cicciu learned of plaintiff's accident was when he was notified about the lawsuit.
On June 10, 2019, Findlay moved for summary judgment dismissing the complaint as against it, arguing that plaintiff could not make out a prima facie case of negligence against it, because he admitted seeing a wet floor warning sign, proceeded without caution, and slipped on a wet floor.
In support, Findlay submitted an incident report dated July 18, 2017.
Porter Elmer Concepcion reported that at 11:05 a.m., he was mopping the west side hallway, saw plaintiff from the corner of his eye walking towards the east side hallway, and yelled at him to be careful. However, Concepcion's verbal warning was too late, as plaintiff had already slipped and fallen. Rosalba Perez, the resident manager, completed the incident report. She spoke with Itzel Mejia, the building's social services coordinator on the date of the accident. Mejia said that porter Conception had informed her of plaintiff's slip and fall, and that she had instructed him to call 911. Mejia then checked on plaintiff and saw a couple of wet floor signs near the area where he fell, indicating that the floor had been recently mopped. Mejia took photographs of the area.
In a supporting letter dated July 18, 2017, Mejia confirmed the same version of the facts, and attached photographs showing at least three open, standing wet floor signs. However, it is unclear exactly where the signs were located, based on the photographs.
On July 25, 2019, plaintiff and Findlay stipulated to adjourn the return date of the motion from July 29, 2019 to September 20, 2019, and agreed that plaintiff would serve his affirmation in opposition by August 29, 2019.
On September 16, 2019, the parties entered a second stipulation, agreeing to adjourn the return date of the motion from September 20, 2019 to November 8, 2019, and agreed that plaintiff would serve his opposition papers by October 18, 2019.
On November 7, 2019, the parties entered a third stipulation, agreeing to adjourn the return date of the motion to January 10, 2020, and that plaintiff's opposition papers would be served [*3]by December 6, 2019.
On November 15, 2019, plaintiff filed his opposition to the motion. He argued that the evidence showed that Findlay failed to provide adequate warning of the wet floor, because the first warning sign "was in the dry rotunda, before the long hallway, and not in the wet east hallway where the accident occurred." Plaintiff asserted that the first warning sign was approximately 50 feet away from the wet floor where he fell, and citing a Wikipedia page, claimed that "[u]sing an average walk speed of 4.6 feet/second," he walked approximately 50.6 feet after passing the first warning sign before he slipped and fell.
By order entered December 18, 2019, approximately one month after plaintiff filed his opposition, the motion court denied the parties' stipulated request for a third adjournment of the return date on the motion, and sua sponte marked the motion as fully submitted and unopposed. The court stated that it would not accept plaintiff's late papers because plaintiff had not offered a reasonable excuse for his delay in opposing the motion (citing CPLR 2214, 2004). The court noted that more than 150 days had passed since Findlay filed the motion and that the third stipulation was executed just one day before the submission date and well after the date for serving opposition papers, as set forth in the parties' second stipulation.
By order entered July 16, 2020, the court granted, on default, Findlay's unopposed motion. The court found that Findlay had established its entitlement to summary judgment by showing that the employee who was mopping the floor at the time of the accident had placed a wet floor sign in the area, that plaintiff saw the sign, and that he understood that the sign indicated that the floor was wet.
On appeal, plaintiff contends that the motion court erroneously disregarded the parties' third stipulation to adjourn the return date on the motion, as litigating parties are free to chart their own course, and the parties had stipulated to a third adjournment, and had not actually moved the court for an adjournment. In his reply, plaintiff asks this Court to deem his notice of appeal a request for leave to appeal.
This order was not made upon notice and is not appealable as of right (CPLR 5701[a]). However, this Court is authorized to deem a notice of appeal a request for leave to appeal and to grant such leave for a determination on the merits in the interest of justice (CPLR 5701[c]; Matter of Gliklad v Deripaska, 185 AD3d 512, 512 [1st Dept 2020]). Given the facts of this case, this Court grants plaintiff leave to appeal in the interest of justice. Relying on CPLR 2214 and 2004, the motion court dismissed the complaint because plaintiff's counsel did not offer a valid explanation for his late filing. However, counsel filed his opposition pursuant to what he thought was a valid stipulation. A more equitable solution, given that plaintiff's opposition had already been filed a month earlier pursuant to [*4]a stipulation, would have been to sanction plaintiff's attorney or instruct him that, going forward, adjournments would have to be approved by the court at the risk of having the case dismissed. It should also be noted that defendant agreed to the adjournment and was therefore not prejudiced by the November 15th filing of the opposition.
On the merits, we find that Findlay failed to make a prima facie showing entitling it to summary judgment, as it did not eliminate all triable issues concerning whether plaintiff was adequately warned of the wet floor. A landowner owes the public a duty to maintain its property in a reasonably safe condition under the existing circumstances (Basso v Miller, 40 NY2d 233, 241 [1976]), which may include the duty to warn persons reasonably expected to be on the property of known dangers (id.). The reasonableness of a defendant's care when remedying a dangerous condition is determined by considering all the surrounding circumstances (see Pomahac v TrizecHahn 1065 Ave. of Ams., LLC, 65 AD3d 462, 465-466 [1st Dept 2009]). Given the T-shaped nature of the hallway in this case, there are issues of fact as to whether the first warning sign was adequate, especially since the floor in that area was dry. Indeed, "[t]he mere placement of a "wet floor warning sign does not automatically absolve a defendant of negligence" (Hamilton v 3339 Park Dev. LLC, 158 AD3d 440, 442 [1st Dept 2018]). We also note that this housing development housed primarily elderly and handicapped individuals. M-1056 - Zubillaga v Findlay Teller Housing Development
Motion for an enlargement of time to file and serve plaintiff's reply brief and to strike portions of defendant's brief as dehors the record, denied. This Court may take judicial notice of the individual part rules.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: August 12, 2021