## Spizer v Gristedes Supermarkets, Inc.

2024 NY Slip Op 31673(U)

May 13, 2024

Supreme Court, New York County

Docket Number: Index No. 157369/2018

Judge: Eric Schumacher

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:    HON. ERIC SCHUMACHER    PART    23M

*Justice*

---------------------------------------------------------------X

EDITH SPIZER,

                       Plaintiff,

            - v -

GRISTEDES SUPERMARKETS, INC. et ano.,

                    Defendants.

---------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 157369/2018 |
| MOTION DATE | 05/13/2024 |
| MOTION SEQ. NO. | 001 |

**DECISION + ORDER ON MOTION**

**NYSCEF doc nos. 25-49 were read on this motion for summary judgment.**

Motion by defendants pursuant to CPLR 3212 for summary judgment dismissing the complaint granted.

## BACKGROUND

Plaintiff Edith Spizer (hereinafter Edith) commenced this action on August 7, 2018, by filing the summons and complaint (see NYSCEF doc no. 1 [hereinafter complaint]). The complaint alleges, in sum and substance, that, on February 22, 2018, Edith sustained injuries when she slipped and fell in a Gristedes Supermarket located at 1450 3rd Avenue, New York, NY 10028 (hereinafter premises) (see id. ¶¶ 6, 9). The complaint further alleges that defendants owned, operated, controlled, and maintained the premises (see id. ¶¶ 6-7). The complaint asserts a negligence cause of action against defendants and alleges that they either created or had actual or constructive notice of the defective condition which caused Edith's accident (see id. ¶¶ 10-13).

On April 18, 2020, Edith passed away. On September 6, 2023, the court so-ordered a stipulation to amend the caption and substitute Scott Spizer, Individually and as Executor of the Estate of Edith Spizer, deceased (hereinafter executor) (see NYSCEF doc no. 23). This change is not reflected in NYSCEF.

On November 7, 2023, defendants filed this motion for summary judgment (see NYSCEF doc no. 25). In support of the motion defendants submit the deposition of Edith. As to the location of the accident, Edith testified that she did not remember where she was when the accident occurred, but that she was "pretty sure" she did not get "very far" past the entrance (Kang affirmation, exhibit D, Edith tr at 47, lines 2-6). As is relevant here, when asked, "[d]o you recall what caused you to fall that day?", Edith replied, "[n]o" (id. at 20, line 25; at 21, lines 2-3). Edith further testified that "[i]t was damp. It had been raining outside. When I went into the store, it was raining slightly[,] and the floor was damp" (id. at 48, lines 15-17). When asked, "[c]an you describe the dampness that you saw in any way?", Edith replied, "I don't recall seeing any dampness, but it was there" (id. at 53, line 25; at 54, lines 2-5). When asked, "[y]ou didn't

---

**157369/2018  SPIZER v GRISTEDES SUPERMARKETS, INC. et ano.**
**Motion No.  001**

Page 1 of 6

[* 1]

see any dampness prior to the accident?", Edith replied, "[n]o" (id. at 54, lines 8-10). When asked, "[w]ere your clothes wet after the accident?", Edith replied, "I don't remember because I was walking out right into a car" (id. at 54, lines 11-12; at 55, lines 2-3).

Defendants further submit the deposition of Ndiaye, the comanager of the premises at the time of the accident (Kang affirmation, exhibit E, Ndiaye tr at 10, lines 16-25). As part of his responsibilities as comanager, Ndiaye was tasked with routinely and frequently inspecting the supermarket floor (see id. at 24, lines 4-10). Specifically, Ndiaye testified that he is constantly examining the supermarket floor and that it takes "two minutes" to examine the floor of the entire supermarket (id. at 24, lines 11-16; at 25, lines 24-25; at 26, line 2). As to the location of the accident, Ndiaye testified that the accident occurred three to five feet away from the supermarket entrance, in the produce section (see id. at 18, lines 6-15). Ndiaye further testified that "[the floor] was not wet. [Edith's] clothes [were] not wet" and that "[the] section was not wet" (id. at 86, lines 18-19, 21). When asked, "[d]id you examine the section before the fall or are you talking about after the fall?", Ndiaye replied, "[b]efore and after" (id. at 86, lines 23-25). When asked, "[d]id you personally examine the floor before the incident occurred?", Ndiaye replied, "[y]es" (id. at 87, lines 2-4). When asked, "[h]ow long before the incident did you observe the floor?", Ndiaye replied, "[e]very two minute[s], every five minute[s] [I] do that" (id. at 87, lines 5-8). When asked, "[w]ere there any mats placed at or near the entrance . . . at the time of the incident?", Ndiaye replied, "[y]es . . . we have three mats" (id. at 19, lines 2-12). When asked, "[t]here months prior to the incident, had anybody tripped in [the premises]?", Ndiaye replied, "[n]o" (id. at 58, lines 17-20). Ndiaye further testified that if an employee sees water accumulation on the floor, they are instructed to place a wet floor sign down and come get him (id. at 12, lines 11-25; at 13, lines 2-4).

Defendants further submit the further deposition of Ndiaye. When asked, "[d]id you monitor the floors of [the premises] the morning of February 22, 2018?", Ndiaye replied, "[y]es" (Kang affirmation, exhibit F, Ndiaye tr at 21, lines 14-16). When asked, "[h]ow many times did you monitor the floor before the accident, approximately?", Ndiaye replied, "[a] lot of times . . . more than ten" (id. at 21, lines 17-21). When asked, "[h]ow frequently would you walk around the store to look at the floor?", Ndiaye replied, "every two to five minutes" (id. at 22, lines 3-6). When asked, "[d]id you observe any liquid accumulation on the floor of [the premises] on the morning of February 22, 2018?", Ndiaye replied, "[n]o" (id. at 22, lines 10-13). When asked, "[d]id you observe any spills on the floor of [the premises] on that morning?", Ndiaye replied, "[n]o" (id. at 22, lines 14-16). When asked "[d]id any employees notify you of any liquid accumulation" or "spills on the floor of [the premises] the morning of February 22nd?", Ndiaye replied, "[n]o" (id. at 22, lines 20-25; at 23, line 2).

Defendants further submit the affidavit of Ndiaye. Ndiaye states that

"[p]rior to and including the date of the subject accident, the employees and myself would monitor the floor of the supermarket on a regular basis, typically every five to ten minutes. If there was a condition on the floor, such as an accumulation of water or water tracked in through footprints, employees were instructed to place a wet floor sign and alert myself, and I would perform the mopping"

157369/2018   SPIZER v GRISTEDES SUPERMARKETS, INC. et ano.                    Page 2 of 6
Motion No. 001

[* 2]                                           2 of 6

(Kang Affirmation, exhibit G, aff of Ndiaye ¶ 3).

Ndiaye further states that "[p]rior to the happening of the accident, I monitored the floors of the supermarket more than ten times. I walked around the supermarket and checked the floors every two to five minutes. It took me less than two minutes to examine the entire supermarket. I did not observe any accumulation of water, spills[,] or wet floor signs on the floor" (id. ¶ 6). Ndiaye further states: "I was in the office for less than 30 seconds after having just come from the accident location before being alerted on the loudspeaker as to the happening of the accident. The accident occurred approximately five feet from the entrance to the store near the produce section. I was in this area right before I made my way into the office[,] and I did not observe any conditions" (id. ¶¶ 7-8). Ndiaye further states that "[n]either [Edith] nor her son indicated that she slipped on a wet floor. Her clothes were not wet. I examined the area of the accident and observed that the section was not wet. I completed an incident report at the accident scene while [Edith] and her son were still there. In the section of 'Describe Condition of Location', I noted that it was 'clear and dry'" (id. ¶ 9; see also Kang affirmation, exhibit K at 2 [a copy of the subject incident report indicating that the condition of the location was "clear and dry"]).

Defendants further submit the deposition of executor, Edith's son. As is relevant here, executor testified that "it was raining" at the time of the incident, but that the rain "wasn't heavy", that he observed "moisture, wetness apparent" in the area where Edith fell, and that "there were no mats" in the area where Edith fell (Kang affirmation, exhibit H, executor tr at 27, lines 23-24; at 28, lines 5-6; at 38, lines 22-25; at 64, lines 4-5).

On February 16, 2024, executor filed an affirmation in opposition to defendants' motion for summary judgment (see affirmation of Schwartz). Executor asserts that defendants allowed the dangerous condition which caused Edith's accident to manifest through their negligent failure to adhere to their customary weather procedures, namely, putting down mats and wet-floor signs when it was raining (see id. ¶¶ 25-26). Executor further asserts that the deposition testimony demonstrates the existence of a genuine issue of material fact as to whether the floor where Edith fell was wet (id. ¶ 34). Executor further asserts that Ndiaye's proximity to the accident site warrants adequate notice of the wet condition on the floor (id. ¶ 19). Executor submits no new evidence with the opposition papers.

On March 1, 2024, defendants filed an affirmation in reply to the motion asserting that plaintiff has failed to demonstrate the existence of a genuine issue of material fact as to whether defendants caused, created, or had actual or constructive notice of the alleged defective condition which caused Edith's accident (see NYSCEF doc no. 48 ¶ 17).

## DISCUSSION

To succeed on a motion for summary judgment, the movant must "make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to eliminate any material issues of fact from the case" (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985], citing Zuckerman v City of New York, 49 NY2d 557, 562 [1980]). "Failure to

157369/2018   SPIZER v GRISTEDES SUPERMARKETS, INC. et ano.
Motion No.  001

Page 3 of 6

3 of 6

[* 3]

make such a showing requires denial of the motion, regardless of the sufficiency of the opposing papers" (Winegrad at 853).

Once the movant's prima facie showing has been made, the burden shifts to the opposing party to establish the existence of a material issue of fact sufficient to require a trial (see De Lourdes Torres v Jones, 26 NY3d 742, 763 [2016]). An opposing party's "mere conclusions, expressions of hope, or unsubstantiated allegations or assertions are insufficient" to defeat a movant's summary judgment motion (Siegel v City of New York, 86 AD3d 452, 455 [1st Dept 2011], quoting Zuckerman at 562).

As the Appellate Division, First Department stated in Velocci v Stop and Shop (188 AD3d 436, 439 [1st Dept 2020]),

"A defendant moving for summary judgment in a slip-and-fall action has the initial burden of showing that it did not create the alleged hazardous condition and lacked actual or constructive notice of its existence (see Rodriguez v 705-7 E. 179th St. Hous. Dev. Fund Corp., 79 AD3d 518, 519 [1st Dept 2010]). A defendant establishes that it lacked actual notice when it produces a witness who can testify that no complaints about the location were received before the accident, and there were no prior incidents in that area before the plaintiff fell (see Frederick v New York City Hous. Auth., 172 AD3d 545, 545 [1st Dept 2019]). Generally, constructive notice is found when the alleged dangerous condition is visible, apparent, and exists on defendant's premises for a sufficient period to afford the defendant an opportunity to discover and remedy it (see Ross v Betty G. Reader Revocable Trust, 86 AD3d 419, 421 [1st Dept 2011]). . . . A defendant can meet its burden of showing that it lacked constructive notice by producing evidence of its maintenance activities on the day of the accident, and specifically showing that the alleged condition did not exist when the area was last inspected or cleaned before the plaintiff fell (see Gomez v J.C. Penny Corp., Inc., 113 AD3d 571, 571-572 [1st Dept 2014])."

Here, the court finds that defendants have met their prima facie burden by means of the EBT transcripts and affidavit of Ndiaye submitted. Ndiaye's testimony that he inspected the area where plaintiff fell for wetness approximately three minutes prior to the alleged accident, and that the alleged condition did not exist when he last inspected the area, establish prima facie that defendant did not create or have actual or constructive notice of the alleged condition. Moreover, Edith's own testimony is that there was no visible wetness prior to the accident (see Valenta v Spring St. Nat., 172 AD3d 623 [1st Dept 2019] [affirming the Supreme Court's grant of the defendants motion for summary judgment based on that "[t]he evidence that neither plaintiff nor defendants' employees saw the slippery substance on the floor until after plaintiff fell demonstrate[d] that it was not sufficiently visible and apparent to charge defendants with constructive notice"]; see also Gomez at 572 [reversing the Supreme Court's denial of the defendant's motion for summary judgment based on, among other things, that the plaintiff's own testimony that she had not noticed any water on the floor demonstrated that the water spot was not "visible and apparent" and did not "exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it"]). The court finds that there is no

genuine issue of material fact as to that defendants did not create or have actual or constructive notice of any wetness which allegedly caused Edith's accident. As such, defendants have shown prima facie entitlement to summary judgment dismissing the complaint.

The burden having shifted to executor, the opposition papers fail to raise a genuine issue of material fact. Contrary to executor's contention, "that defendants had a practice of placing a certain number of mats in a particular fashion in inclement weather and [may have] failed to adhere to that practice at the time of the accident is insufficient to raise a triable issue of fact with respect to defendants' negligence" (Pomahac v TrizecHahn 1065 Ave. of Americas, LLC, 65 AD3d 462, 465 [1st Dept 2009] [criticizing as erroneous the proposition that defendants could only satisfy their duty of reasonable care by placing a certain number of mats down, and not by promptly mopping up any moisture]). Here, executor argues that, because he did not see any mats in the area where Edith slipped, defendants failed to adhere to their policy of placing mats down when it was raining. What executor fails to discuss is that "all of the circumstances regarding a defendant's maintenance efforts must be scrutinized in ascertaining whether the defendant exercised reasonable care in remedying a dangerous condition" (id. at 465-466). It is undisputed that Ndiaye inspected the floor where plaintiff allegedly fell approximately three minutes prior to the accident. As in Pomahac, any conflicting testimony as to that defendants failed to follow their "internal policy of placing three mats in a particular configuration . . . cannot serve as a basis for liability" and fails to raise a genuine issue of material fact (id. at 466).

Further, to the extent that executor argues that his testimony that it was raining and that the floor was wet creates a genuine issue of material fact, "that it was raining and water was being tracked in does not constitute notice of a dangerous situation" (Garcia v Delgado Travel Agency Inc., 4 AD3d 204, 204 [1st Dept 2004]; see also DeCongelio v Metro Fund, LLC, 183 AD3d 449, 450 [1st Dept 2020], citing Garcia at 204). Executor has failed to submit any evidence that defendants created, or had actual or constructive notice of, any wetness which allegedly caused Edith's accident. As such, the court finds that executor has failed to demonstrate the existence of a genuine issue of material fact.

THIS SPACE IS INTENTIONALLY LEFT BLANK

157369/2018   SPIZER v GRISTEDES SUPERMARKETS, INC. et ano.
Motion No. 001

Page 5 of 6

## CONCLUSION

Accordingly, it is

ORDERED that the motion by defendants pursuant to CPLR 3212 for summary judgment dismissing the complaint is granted; and it is further

ORDERED that the complaint is dismissed; and it is further

ORDERED that, within five days of entry, defendants shall serve a copy of this order with notice of entry on executor and on the clerk, who shall enter judgment accordingly.

The foregoing constitutes the decision and order of the court.

| | | | | | |
|---|---|---|---|---|---|
| **5/13/2024** | | | | ERIC SCHUMACHER, J.S.C. | |
| **DATE** | | | | | |
| CHECK ONE: | X | CASE DISPOSED | | NON-FINAL DISPOSITION | |
| | X | GRANTED | DENIED | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | REFERENCE |

**157369/2018 SPIZER v GRISTEDES SUPERMARKETS, INC. et ano.**
**Motion No. 001**

Page 6 of 6